IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROUGHAM FUND I TRUST, BY ITS TRUSTEE, WILMINGTON SAVINGS FUND SOCIETY, FSB, d/b/a CHRISTIANA TRUST, solely in its capacity as the Trustee, Individually, and on Behalf of All Others Similarly Situated,<br><br>       *Plaintiff*,<br>v.<br><br>STATE OF NEW YORK,<br><br>       *Defendant*. | Civil Case No.:  1:25-cv-1304 (MAD/MJK)<br><br>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |

# COMPLAINT

Plaintiff (also referred to as "Class Plaintiff"), by and through their undersigned counsel, bring this Class Action Complaint against the State of New York, and in support thereof, state and allege as follows:

## INTRODUCTION

1. This is a class action seeking declaratory relief and damages against the State of New York under the Takings Clause of the Fifth and Fourteenth Amendments to the United States Constitution, as well as the Contracts Clause of the United States Constitution. The class action seeks similar relief under rights afforded by the New York Constitution.

2. Plaintiff challenges recently enacted legislation by the New York State Legislature and signed into law by the Governor, which retroactively altered the statute of limitations applicable to mortgage foreclosure actions in a way that rendered thousands of mortgages legally

unenforceable, thereby depriving Plaintiff and similarly situated lenders and investors of their vested contractual rights and secured interests in real property without just compensation.

3. Plaintiff brings this Action on behalf of itself and a class of mortgage holders whose property interests were destroyed by the retroactive operation of the New York Foreclosure Abuse Prevention Act ("FAPA"), Chapter 821 of the Laws of 2022.

4. By retroactively extinguishing vested foreclosure rights and rendering mortgage loans unenforceable, FAPA effected an uncompensated taking of private property.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because it arises under the Constitution and laws of the United States.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because property interests affected by the challenged statute are located in this District.

## PARTIES

7. Plaintiff, Brougham Fund I Trust, by its Trustee, Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, solely in its capacity as Trustee, is a trust duly organized under the laws of the State of Delaware and is engaged in the business of owning, acquiring, and enforcing mortgage loans secured by real property in the State of New York.

8. Defendant, the State of New York, is a sovereign state of the United States and is sued for declaratory relief, as Defendant is responsible for the enactment and enforcement of FAPA. To the extent Plaintiff seeks damages, such damages are sought against appropriate state officials acting under color of law.

**FACTUAL BACKGROUND**

9. Plaintiff, and members of the putative class, hold portfolios of mortgage loans secured by real property located throughout New York State, which mortgages represent vested property rights. These vested property rights include the ability to enforce the mortgage contracts through foreclosure and related remedies recognized under New York law at the time the loans were originated or acquired.

**FACTS REGARDING REPRESENTATIVE PLAINTIFF**

10. On October 10, 2014, predecessor-in-interest mortgagee, Residential Mortgage Solution LLC ("RMS, LLC") initiated a foreclosure at index number 707345/2014 (the "Representative Foreclosure Proceeding") in the Supreme Court of New York in the County of Queens (the "Trial Court") in order to foreclose on a mortgage dated June 28, 2005 (also referred to as "Representative Mortgage") secured by the real property commonly known as 187-19 Tioga Drive, Saint Albans, Queens County, New York 11412 (the "Representative Real Property").

11. The Representative Mortgage was in the original principal amount of $314,880.00, with interest and other amounts accruing as a result of the borrower's default. All amounts due and owing, including all costs, fees, accrued interest and all other amounts due and payable under the terms of the underlying note and mortgage were secured by the Representative Real Property pursuant to the terms of the Representative Mortgage. The Representative Mortgage was arguably accelerated in 2011 when the then servicer/mortgagee issued a demand letter upon the borrower. The Representative Foreclosure Proceeding was brought by RMS, LLC well within the then New York 6-year statute of limitations.

12. The Representative Mortgage was transferred to Representative Plaintiff on or about November 11, 2016, and the assignment of mortgage to Representative Plaintiff was duly recorded on November 21, 2019, at CRFN 2019000381145. The Representative Mortgage was assigned to Representative Plaintiff in accordance with New York's Uniform Commercial Code which includes assignment to Representative Plaintiff of all rights, title and interests in the Representative Mortgage.

13. It was well established law that, "*...the assignee steps into the assignor's shoes and acquires whatever rights the latter had (see Furlong v. Shalala, 156 F.3d 384, 392 ([2d Cir 1998]).*" *In re Stralem*, 303 A.D.2d. 120, 122 (NY App. 2d, 2003).

14. At the time of the assignment of the Representative Mortgage, RMS, LLC, as well as all successors-in-interest, were entitled to protections and rights existing under the New York Statute of Limitations known as the "Savings Clause."

15. All class members are similarly situated in that they acquired all rights, title and interest to a mortgage during the pendency of an active foreclosure, including their rights as set forth under the Savings Clause.

16. The Savings Clause had been in place for over 200 years and has afforded original lenders, plaintiffs and mortgagees, along with their successors-in-interest, the ability to correct technical deficiencies found by the Courts within six months of a dismissal.

17. Therefore, at the time Representative Plaintiff acquired the Representative Mortgage they had the right to restart the foreclosure in the event it was dismissed for failing to comply with one of the many highly technical and procedural aspects of New York's residential foreclosure laws.

18. As a result of protracted litigation which is common in New York's foreclosure process, including, but not limited to, intervening bankruptcy and Covid delays, on May 22, 2023, Representative Plaintiff filed its Motion for Summary Judgment in Foreclosure. Borrower opposed the Representative Plaintiff's motion and sought dismissal claiming a defect in the notice of mailing of the initial foreclosure notice from years earlier.

19. On December 30, 2022, Governor Kathy Hochul signed FAPA into law at Chapter 821 of the Laws of 2022, amending Civil Practice Law and Rules ("CPLR") §§ 203 and 205-a, which retroactively altered how New York calculates the statute of limitations applicable to mortgage foreclosure actions.

20. These FAPA amendments not only overturned the New York Court of Appeals' decision in *Freedom Mortgage Corp. v. Engel*, 37 N.Y.3d 1 (2021), they also imposed new retroactive limitations on the ability of certain mortgagees to recommence foreclosure actions.

21. The FAPA amendments also stripped the Savings Clause from mortgagees who had acquired their interest in the mortgage during the pendency of an active foreclosure, such as Representative Plaintiff and all similarly situated class members.

22. Effectively, had RMS, LLC still been the Plaintiff in the Representative Foreclosure Proceeding, then RMS, LLC would still have the benefit of the Savings Clause and could have restarted the underlying foreclosure by resending the pre-foreclosure notice (or cure any other technical defect).

23. Prior to the passage of FAPA, Representative Plaintiff had the same rights as RMS, LLC, including, but not limited to the benefit of the Savings Clause. Notwithstanding, FAPA stripped the Savings Clause rights from Representative Plaintiff (as well as all class members) long

after it (they) had acquired the Representative Mortgage (their mortgage). The State's actions deprived Representative Plaintiff and all similarly situated members, of their valuable rights to maintain and restart the foreclosure proceeding.

24. The valuable rights and interests Representative Plaintiff acquired at the time of its purchase of the Representative Mortgage have been stripped by New York State without any compensation. Further, New York State only stripped those rights from Representative Plaintiff because it was a successor-in-interest, notwithstanding the free transferability of rights under the New York Uniform Commercial Code. Even where the dismissal is without prejudice due to the highly technical and procedural nature of New York law, the actions of New York in stripping the Savings Clause rights from successor mortgagees thereby deprived Representative Plaintiff and all similarly situated members of their valuable rights they acquired at the time they purchased a mortgage, like the Representative Mortgage.

25. The FAPA amendment that is subject of this Class Action strips the right of recommencement (also referred to as the "Savings Clause") from a successor-in-interest, such as Representative Plaintiff, who acquired the Representative Mortgage during the pendency of the Representative Foreclosure Proceeding, thereby stripping the Representative Plaintiff of any right to utilize the Savings Clause. The Savings Clause remains available to mortgagees who have not transferred the mortgage during the pendency of a foreclosure proceeding.

26. On October 3, 2023, the Trial Court found that there was not strict compliance with mailing of the initial foreclosure notice under RPAPL 1304 and thereby dismissed the underlying foreclosure proceeding. As a result of the passage of FAPA, Representative Plaintiff, as the new owner of the Representative Mortgage, was stripped of its right to invoke the Savings Clause and therefore stripped of its ability to cure the technical defect.

27. By striping Representative Plaintiff of its prior existing rights under the Savings Clause, New York thereby deprived Representative Plaintiff of its rights to bring a new action within six months thereby effectively taking the full value of the mortgage from Representative Plaintiff. But for the actions of New York in passing FAPA and stripping Representative Plaintiff of its rights of recommencement, Representative Plaintiff could have sent a new RPAPL 1304 notice and recommenced the foreclosure proceeding seeking all amounts due.

28. Instead, as a successor mortgagee, its rights were removed. Notwithstanding, had RMS remained as Plaintiff, then it would still have the benefits of the Savings Clause. New York retroactively stripped Representative Plaintiff of rights it had validly obtained through the transfer of the mortgage along with all associated rights under the UCC over six years after the Representative Mortgage had been transferred to Representative Plaintiff.

29. As a result of this retroactive legislation, many loans, such as Representative Plaintiff's, that were otherwise enforceable under the prior law (and for which all rights had been fully transferred in accordance with the UCC) have now been declared time-barred, resulting in the total loss of the ability to enforce recorded security interests in real property.

30. The affected loans involve real property interests and contract rights that were vested under New York law at the time they were originated or acquired.

31. Plaintiff and the proposed class members reasonably relied on pre-existing law and judicial precedent when making servicing and litigation decisions relating to foreclosure.

32. FAPA's retroactive application of the changed statute of limitations by extinguishing rights validly and previously transferred to successor mortgagees such as Representative Plaintiff has the impact of extinguishing thousands of mortgages across the State,

depriving lenders, investors, servicers, and other mortgage holders of the entire economic value of their secured interests. FAPA deprives Representative Plaintiff and all others similarly situated of property interests without just compensation, in violation of the Takings Clause of the Fifth Amendment.

33. FAPA provides no mechanism to compensate affected mortgage holders for the value of the property rights extinguished.

34. Plaintiff held a first mortgage lien against the Representative Real Property.

35. Due solely to the enactment of FAPA, at a time more than six years after the default and acceleration of the Representative Mortgage loan, Representative Plaintiff was stripped of its rights under the Savings Clause; rights Representative Plaintiff acquired at the time of its acquisition of the Representative Mortgage. But for the actions of the State in stripping rights from Representative Plaintiff, Representative Plaintiff could have cured the defect in the RPAPL 1304 and restarted the litigation.

36. New York has stripped the Savings Clause rights (existing for over 200 years) only from members such as Representative Plaintiff (those who acquired a mortgage from a prior mortgagee during the pendency of a foreclosure action) without just compensation. Class members share the same loss of the abilities to enforce contractual rights defined in a recorded mortgage.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of a class defined as (the "Class"):

All persons or entities who, on or after December 30, 2022, held a mortgage loan secured by real property in the State of New York that became unenforceable, in whole or in part, by operation of FAPA (L. 2022, ch. 821).

38. Excluded from the Class are Defendant, its officers and employees, and members of the judiciary assigned to this Case.

39. **Numerosity**: The Class is so numerous that joinder is impracticable. On information and belief, FAPA extinguished enforcement rights in tens of thousands of mortgage loans.

40. **Commonality**: – Common questions of law and fact include:

   a. Whether FAPA retroactively extinguished vested foreclosure rights;

   b. Whether those rights constitute property under the Takings Clause;

   c. Whether retroactive application of FAPA effected a taking without just compensation; and

   d. What remedies (injunctive, declaratory, and monetary) are appropriate.

41. **Adequacy**: Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in these claims and complex litigation.

42. Rule 23(b)(2) – Defendant has acted on grounds generally applicable to the Class, making injunctive and declaratory relief appropriate.

43. Rule 23(b)(3) – Common questions of law and fact predominate, and a class action is superior to other methods of adjudication.

## COUNT I

**Unconstitutional Taking Without Just Compensation**

**U.S. Const. Amend. V and XIV**

44. Plaintiff realleges and incorporates by reference all prior paragraphs as though fully set forth at length herein.

45. The retroactive change to New York's foreclosure statute of limitations effectuated by Chapter 821 of the Laws of 2022 constitutes a regulatory taking of Plaintiff's Property.

46. Plaintiff's right to enforce mortgage contracts and recover the value of the collateral is a vested property interest protected under the U.S. Constitution.

47. The State of New York has substantially interfered with and destroyed the economic value of these property interests by retroactively changing the statute of limitations and rendering enforcement of the affected loans legally impossible.

48. The statute does not provide for or authorize any just compensation to affected lenders, servicers, or investors.

49. This deprivation constitutes an uncompensated taking of property in violation of the Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment.

50. As a direct and proximate result of the State's unconstitutional conduct, Plaintiff, and those mortgage holders similarly situated, have suffered actual damages, including the total loss of the economic value of multiple mortgage interests, in an amount to be proven at trial.

## COUNT II

### Contracts Clause – U.S. Const. art. I, § 10

51. Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

52. Article I, Section 10 of the United States Constitution provides that "No State shall … pass any … Law impairing the Obligation of Contracts."

53. Plaintiff and the members of the Class are parties to, or assignees and beneficiaries of, mortgage contracts executed under the laws of New York State.

54. At the time these contracts were entered, New York law recognized the enforceability of foreclosure remedies, subject to a statute of limitations and other procedural rules.

55. The retroactive application of FAPA substantially impaired these contracts by extinguishing lenders' and assignees' rights to enforce repayment of mortgage debt through foreclosure.

56. The impairment is substantial and unreasonable, as it destroys the essential security and enforceability of the contracts.

57. The State of New York cannot justify the retroactive deprivation of contractual rights under any legitimate public purpose sufficient to outweigh the Constitution's prohibition.

58. Accordingly, FAPA violates the Contracts Clause of the United States Constitution.

59. Plaintiff and the Class are entitled to declaratory relief, and any other relief deemed just and proper by this Court.

## COUNT III

### Due Process – U.S. Const. amend. XIV

60. Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

61. The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

62. Plaintiff and the Class possessed vested property and contract rights in the enforceability of their mortgage loans, including the right to foreclose upon default.

63. The retroactive application of FAPA destroyed those vested rights and deprived Plaintiff and the Class of the benefit of their bargain without adequate justification, notice, or compensation.

64. The legislation operates arbitrarily and irrationally, as it retroactively nullifies valid property rights and undermines settled expectations without serving a legitimate or proportionate state interest.

65. This retroactive deprivation of rights constitutes a violation of the substantive protections of the Due Process Clause of the Fourteenth Amendment.

**66.** Plaintiff and the Class are entitled to declaratory, as well as such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims set forth in this Complaint.

[Rest of Page Intentionally Left Blank]

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Certify this action as a Class Action under Fed. R. Civ. P. 23;

B. Declare that the retroactive application of Chapter 821 of the Laws of 2022 constitutes an unconstitutional taking without just compensation;

C. Award Plaintiff and the Class just compensation for the taking of their property interests;

D. Award attorneys' fees and costs;

E. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ Steven K. Eisenberg, Esquire
Steven K. Eisenberg, Esquire
Jessica Manis, Esquire (Pro Hac Vice Pending)
Stern & Eisenberg, PC
1581 Main Street, Suite 200
Warrington, Pennsylvania 18976
seisenberg@sterneisenberg.com
(215) 572-8111

Jonathan Roman, Esquire
jroman@hoflawgroup.com
Hladik, Onorato & Federman, LLP
777 West Chester Avenue
Suite 101
White Plains, NY 10604
845-270-8779

Stephen M. Hladik, Esquire
shladik@hoflawgroup.com
(Pro Hac Vice Pending)
298 Wissahickon Avenue
North Wales, PA 19454
215-855-9521

Date: 9/16/2025