IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROUGHAM FUND I TRUST, | : |
| BY ITS TRUSTEE, WILMINGTON | : |
| SAVINGS FUND SOCIETY, FSB, | : Civil Action No.  1:25-CV-1304 (MAD/MJK) |
| d/b/a CHRISTIANA TRUST, solely | : |
| in its capacity as the Trustee, | : |
| Individually, and on Behalf of All Others | : |
| Similarly Situated, | : |
| *Plaintiff*, | : Class Action |
| v. | : Complaint |
| | : |
| STATE OF NEW YORK, by and through | : |
| KATHY HOCHUL, in her official capacity | : JURY TRIAL DEMANDED |
| as GOVERNOR and by and through | : |
| JAMES SANDERS, JR., in his official | : |
| capacity as LEGLISLATOR/SENATOR | : |
| and on behalf of all others similarly situated; | : |
| and, THE STATE OF NEW YORK | : |
| *Defendants.* | : |

## CLASS ACTION

## COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

 Plaintiff, Brougham Fund I Trust, by its Trustee, Wilmington Savings Fund Society, FSB,

d/b/a Christiana Trust, solely in its capacity as Trustee  brings this class action complaint (the

"Action") individually and on behalf of all others similarly situated (also referred to as "Class

Plaintiff"), by and through their undersigned counsel, against the State of New York by and through

Kathy Hochul, in her official capacity as Governor ("Hochul") and by and through James Sanders,

Jr., in his official capacity as Legislator/Senator and on behalf of all others similarly situated

("Sanders") and the State of New York (collectively with Hochul and Sanders referred to as "New

York"), and in support thereof, state and allege as follows:

## INTRODUCTION

1.      This is a class action seeking declaratory relief and damages against the New York under the Takings Clause of the Fifth and Fourteenth Amendments to the United States Constitution, as well as the Contracts Clause of the United States Constitution.  The class action seeks similar relief under rights afforded by the New York Constitution.

2.      Acting under color of state law, and purporting to be acting in the public good, Sanders sponsored legislation and Hochul signed legislation, known as the Foreclosure Abuse Prevention Act ("FAPA"), into law which retroactively altered the contractual and statutory rights applicable to certain classes of mortgage loan lenders' thereby altering and effectively retroactively rendering their rights, title and interests in mortgage loans (and the underlying real property rights to which those mortgage liens attached) legally unenforceable, thereby depriving Plaintiff and similarly situated lenders and investors of their vested contractual rights and secured interests in real property without just compensation.

3.      By enacting FAPA, New York engaged in the seizure of vested rights and interests belonging to Plaintiff and similarly situated lenders and investors, retroactively depriving them of vested rights and effectively transferring those rights and value to other persons and entities having junior interests in said properties.

4.      Plaintiff brings this Action on behalf of itself and a class of mortgage holders whose property interests were destroyed, damaged or impaired by the retroactive operation of FAPA, Chapter 821 of the Laws of 2022.

5.      It is believed and therefore alleged that Sanders, the legislator who sponsored and introduced FAPA, also personally benefitted from FAPA whereby by the operation of FAPA

Sanders was the recipient of additional property rights when the mortgage loan interest and property right against his personal residence was retroactively extinguished through the enactment of FAPA.

6.     By retroactively extinguishing vested property interests and rights in the form of mortgages against private property, rendering mortgage loans unenforceable and effectively statutorily retroactively divesting Class Plaintiff's property interests, FAPA effected an uncompensated taking and transfer of private property to others.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because it arises under the Constitution and laws of the United States.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because property interests affected by the challenged statute are located in this District.

## PARTIES

9.     Plaintiff, Brougham Fund I Trust, by its Trustee, Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, solely in its capacity as Trustee, is a trust duly organized under the laws of the State of Delaware and is engaged in the business of originating, acquiring, and enforcing mortgage loans secured by real property in the State of New York.

10.     Defendant, Kathy Hochul, acting in her official capacity as Governor of the State of New York is responsible for and signed FAPA into law, and is sued in her official capacity, for declaratory relief and damages for effectuating a taking of interests in real property without just compensation and for relief as more fully set forth below.

11.    Defendant, James Sanders, acting in his official capacity as a legislator who introduced and sponsored FAPA, as well as on behalf of all others similarly situated, is sued in his official capacity for declaratory relief and damages for effectuating a taking of interests in real property without just compensation and for relief as more fully set forth below.

12.    Defendant, the State of New York, is a sovereign state of the United States and is sued pursuant to *Ex Parte Young*, 209 U.S. 123 (1908), for declaratory and injunctive relief, as Defendant is responsible for the enactment and enforcement of FAPA. To the extent Plaintiff seeks damages, such damages are sought against appropriate state officials acting under color of law.

## FACTUAL BACKGROUND

13.    Plaintiff, and members of the putative class, hold portfolios of mortgage loans secured by equity in real property located throughout New York State, which mortgages represent vested property rights in the equity of real property. These vested property rights include the ability to enforce the mortgage contract and freely sell and assign those vested property rights, including, but not limited to, the rights to enforce the interests through the judicial process such as through a foreclosure proceeding and related remedies recognized under New York law at the time the loans were originated or acquired.

14.    An interest in the equity of a property is a recognized property interest subject to constitutional protections.  See *Olson v. United States*, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236 (1934). The rights seized by New York have long been important rights existing under the "traditional property law principles" existing in the State of New York.  See *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 638, 143 S.Ct. 1369, 1375, 215 L.Ed.2d. 564, 570 (2023).

## FACTS REGARDING REPRESENTATIVE PLAINTIFF

15.    On October 10, 2014, predecessor-in-interest mortgagee, Residential Mortgage Solution LLC ("RMS, LLC") initiated a foreclosure at index number 707345/2014 (the "Representative Foreclosure Proceeding") in the Supreme Court of New York in the County of Queens (the "Trial Court") in order to foreclose on a mortgage dated June 28, 2005 (also referred to as "Representative Mortgage") secured by  the real property commonly known as 187-19 Tioga Drive, Saint Albans, Queens County, New York 11412 (the "Representative Real Property").

16.    The Representative Mortgage was in the original principal amount of $314,880.00, with interest and other amounts accruing as a result of the borrower's default.  All amounts due and owing, including all costs, fees, accrued interest and all other amounts due and payable under the terms of the underlying note and mortgage were secured by the Representative Real Property pursuant to the terms of the Representative Mortgage.  The Representative Mortgage was arguably accelerated in 2011 when the then servicer/mortgagee issued a demand letter upon the borrower. The Representative Foreclosure Proceeding was brought by RMS, LLC well within the then New York 6-year statute of limitations.

17.    The Representative Mortgage was transferred to Representative Plaintiff on or about November 11, 2016, and the assignment of mortgage to Representative Plaintiff was duly recorded on November 21, 2019, at CRFN 2019000381145.  The Representative Mortgage was assigned to Representative Plaintiff in accordance with New York's Uniform Commercial Code which includes assignment to Representative Plaintiff of all rights, title and interests in the Representative Mortgage.

18.     It was well established law that, "*...the assignee steps into the assignor's shoes and acquires whatever rights the latter had (see Furlong v. Shalala, 156 F.3d 384, 392 ([2d Cir 1998]).*" In re Stralem, 303 A.D.2d. 120, 122 (NY App. 2d, 2003).

19.     At the time of the assignment of the Representative Mortgage, RMS, LLC, as well as all successors-in-interest were entitled to protections and rights existing under the New York Statute of Limitations known as the "Savings Clause," CPLR 205(a).

20.     The Savings Clause is a remedial statute that "has existed in New York law since at least 1788" with roots dating back to seventeenth century England. See *Wells Fargo Bank, N.A. v. Eitani*, 148 A.D,3d 193, 199 (2nd Dept. 2017), *appeal dismissed*, 29 N.Y.3d 1023 (2017).

21.     CPLR 205(a) was intended to promote decisions on the merits of a matter rather than outcomes based upon the statute of limitations due to technical legal requirements. See *Creary v. PHH Mortgage Corp.*, 2021 N.Y. Misc. LEXIS 26244 (NY Queens, Supreme Ct. 2021).

22.     All class members are similarly situated in that they acquired all rights, title and interest to a mortgage during the pendency of an active foreclosure, including their rights as set forth under the Savings Clause.

23.     The Savings Clause had been in place for over 200 years in the State of New York and has afforded all plaintiffs bringing cases subject to CPLR 205(a), including, but not limited to, original lenders, plaintiffs and mortgagees, along with their successors-in-interest, the ability to correct technical procedural type of deficiencies found by the Courts during a prior proceeding, to be cured by bringing of a new proceeding within six months of a dismissal of the original proceeding.

24.     Therefore, at the time Class Plaintiff acquired the Representative Mortgage, it acquired all rights, title and interest from its predecessor, which including the protections afforded to its predecessor under the laws of the State of New York, which included the remedial protections under CPLR 205(a), which includes the right to restart the foreclosure in the event it was dismissed for failing to comply with one of the many highly technical and procedural aspects of New York's residential foreclosure laws.

25.     To this day, had the original plaintiff not transferred all right, title and interest in the Representative Mortgage to Class Plaintiff, that original plaintiff's rights, including all rights under CPLR 205(a) remain undisturbed and fully intact as to the Savings Clause.  New York merely striped this long standing right and interest from successors like Class Plaintiff.

26.     As a result of protracted litigation, which is common in New York's foreclosure process due to the significant administrative and procedural hurdles enacted by New York, which were compounded by intervening bankruptcy and COVID delays, on May 22, 2023, Class Plaintiff filed its Motion for Summary Judgment in Foreclosure.  The Borrower opposed the Class Plaintiff's motion and sought dismissal claiming a defect in the notice of mailing of the initial foreclosure notice from years earlier.

27.     On May 3, 2022, FAPA, as introduced by Sanders, was passed by the New York legislature.

28.     In supporting the merits of this legislation, Sanders has publicly stated that "*If banks cannot present a fair case within six years, and that seems to be quite the length of time, then they should be dismissed.*" New York Post, (12/17/2022).

29.     Notwithstanding, Sanders's own case demonstrated that the New York State judicial system, specifically the downstate system, is fraught with significant delays and roadblocks empowering defendants, like Sanders, to create significant delays in the judicial process.  The foreclosure against Sanders was initiated on October 26, 2009 and remained pending at the time of his sponsorship of FAPA and even remains pending to this date.  Sanders and likely other legislators stand to personally benefit from FAPA.

30.     On December 30, 2022, Hochul signed FAPA into law at Chapter 821 of the Laws of 2022, amending Civil Practice Law and Rules ("CPLR") §§ 203 and 205-a, which retroactively altered how New York calculates the statute of limitations applicable to mortgage foreclosure actions.

31.     These FAPA amendments not only overturned the New York Court of Appeals' decision in *Freedom Mortgage Corp. v. Engel*, 37 N.Y.3d 1 (2021) ("Engel Decision"), they also imposed new retroactive limitations on the ability of certain mortgagees to recommence foreclosure actions.

32.     Mortgage holders who availed themselves of the existing law concerning decelerating a mortgage right were able to unilaterally agree to cease enforcement of their mortgage rights in the property and effectively reset the statute of limitations.  The allowable conduct in accordance with Engel included entering into new payment agreements with the persons who conveyed mortgage rights to the mortgage holder without formal procedural hurdles newly established under FAPA.

33.     Mortgage holders engaged in allowed conduct as further confirmed by the Engel Decision without regard to the FAPA procedural mandates since those mandates did not exist.

Notwithstanding, by the retroactive imposition of FAPA mandates in the reversal of the Engel Decision, New York imposed non-existent burdens upon mortgage holders, burdens that did not exist and now retroactively could have the impact of divesting mortgage holders of their property rights and interests.

34. The FAPA amendments also stripped the Savings Clause from mortgagees who had acquired their interest in the mortgage during the pendency of an active foreclosure, such as Representative Plaintiff and all similarly situated class members.

35. Effectively, had RMS, LLC still been the Plaintiff in the Representative Foreclosure Proceeding, then RMS, LLC would still have the benefit of the Savings Clause and could have restarted the underlying foreclosure by resending the pre-foreclosure notice (or cure any other technical defect).

36. Prior to the passage of FAPA, Representative Plaintiff had the same rights as RMS, LLC, including, but not limited to the benefit of the Savings Clause. Notwithstanding, FAPA stripped the Savings Clause rights from Representative Plaintiff (as well as all class members) long after it (they) had acquired the Representative Mortgage (their mortgage). The State's actions deprived Representative Plaintiff and all similarly situated members, of their valuable rights to maintain and restart the foreclosure proceeding.

37. The valuable rights and interests Representative Plaintiff acquired at the time of its purchase of the Representative Mortgage have been stripped by New York State without any compensation. Further, New York state only stripped those rights from Representative Plaintiff because it was a successor-in-interest, notwithstanding the free transferability of rights under the New York uniform commercial code. Even where the dismissal is without prejudice due to the

highly technical and procedural nature of New York law, the actions of New York in stripping the Savings Clause rights from successor mortgagees thereby deprived Representative Plaintiff and all similarly situated members of their valuable rights they acquired at the time they purchased a mortgage, like the Representative Mortgage.

38.     The FAPA amendment that is subject of this Action strips the right of recommencement (also referred to as the "Savings Clause") from a successor-in-interest, such as Representative Plaintiff, who acquired the Representative Mortgage during the pendency of the Representative Foreclosure Proceeding, thereby stripping the Representative Plaintiff of any right to utilize the Savings Clause.  The Savings Clause remains available to mortgagees who have not transferred the mortgage during the pendency of a foreclosure proceeding.

39.     On October 3, 2023, the Trial Court found that there was not strict compliance with mailing of the initial foreclosure notice under RPAPL 1304 and thereby dismissed the underlying foreclosure proceeding.  As a result of the passage of FAPA, Representative Plaintiff, as the new owner of the Representative Mortgage was stripped of its right to invoke the Savings Clause and therefore stripped of its ability to cure the technical defect.

40.     By striping Representative Plaintiff of its prior existing rights under the Savings Clause, New York thereby deprived Representative Plaintiff of its rights to bring a new action within six months thereby effectively taking the full value of the mortgage from Representative Plaintiff.  But for the actions of New York in passing FAPA and stripping  Representative Plaintiff of its rights of recommencement, Representative Plaintiff could have sent a new RPAPL 1304 notice and recommenced the foreclosure proceeding seeking all amounts due.

41.     Instead, as a successor mortgagee, its rights were removed.  Notwithstanding, had RMS remained as Plaintiff, then it would still have the benefits of the Savings Clause.  New York retroactively stripped Representative Plaintiff of rights it had validly obtained through the transfer of the mortgage along with all associated rights under the UCC over six years after the Representative Mortgage had been transferred to Representative Plaintiff.

42.     As a result of this retroactive legislation, many loans, such as Representative Plaintiff's, that were otherwise enforceable under the prior law (and for which all rights had been fully transferred in accordance with the UCC) have now been declared time-barred, resulting in the total loss of the ability to enforce recorded security interests in real property.

43.     The affected loans involve real property interests and contract rights that were vested under New York law at the time they were originated or acquired.

44.     Plaintiff and the proposed class members reasonably relied on pre-existing law and judicial precedent when making servicing and litigation decisions relating to foreclosure.

45.     FAPA's retroactive application of the changed statute of limitations by extinguishing rights validly and previously transferred to successor mortgagees such as Representative Plaintiff has the impact of extinguishing thousands of mortgages across the State, depriving lenders, investors, servicers, and other mortgage holders of the entire economic value of their secured interests.  FAPA deprives Representative Plaintiff and all others similarly situated of property interests without just compensation, in violation of the Takings Clause of the Fifth Amendment.

46.     FAPA provides no mechanism to compensate affected mortgage holders for the value of the property rights extinguished.

47.     Plaintiff held a first mortgage lien against the Representative Real Property.

48.     The mortgage note is a negotiable instrument under the Uniform Commercial Code. See *Mortgage Elec. Registration Sys., Inc. v Coakley*, 41 AD3d 674, 674 (2007); see also, U.C.C. §§ 3-104(2)(d); 3-301. The mortgage note is secured by the grant of an interest in real property acting as security for the loan. The "holder" is the party entitled to enforce the mortgage note, including the rights under the mortgage. *See*, U.C.C. §§ 1-201(b)(21); 3-104(2)(d); 3-301. The rights from the assignor to the assignee are transferred by a valid assignment of the mortgage note (and mortgage) and the assignee possesses the same rights, benefits, and remedies that the assignor originally possesses. *Salem Tr. Co. v. Manufacturers' Fin. Co.*, 264 U.S. 182, 197, 44 S. Ct. 266, 270, 68 L.Ed. 628, 634 (1924). However, the narrowed Savings Clause enacted by FAPA prohibits the "original plaintiff" from transferring any of its rights, effectively removing negotiability and transferability of mortgage interests. FAPA impermissibly interferes with the property rights of mortgage holders and the contractual rights of parties to a contract for the sale and purchase of such mortgages. See *Sveen v. Melin*, 138 S.Ct. 1815, 1821, 201 L.Ed.2d 180 (2018).

49.     As a direct result of the enactment of FAPA, Plaintiff lost the right to enforce its contractual rights under the mortgage after a default by the borrower occurred, more than six years into the foreclosure litigation and notwithstanding it acquired the Representative Mortgage with the Savings Clause rights intact at the time of the acquisition.

50.     Additionally, by the passage of FAPA, New York retroactively overruled the Court of Appeals in the Engel Decision effectively retroactively making mortgage interests invalid if the newly established process requiring mutual consent for de-acceleration of a mortgage loan was not followed in the cessation of a foreclosure proceeding or even in the reinstatement of a mortgage loan in accordance with the Engel Decision. The enactment of FAPA re-writes the law to make a

once legal and enforceable action that would not render a mortgage interest unenforceable retroactively unenforceable. Such a retroactive change in the law to effect a taking of property rights is a taking.

51.     New York has stripped the Savings Clause rights (existing prior to the enactment of the Constitution) only from members such as Representative Plaintiff (those who acquired a mortgage from a prior mortgagee during the pendency of a foreclosure action) without just compensation. Class members share the same loss of the abilities to enforce contractual rights defined in a recorded mortgage.

52.     At the time of the implementation of FAPA, the Class Plaintiff, and all other similarly situated, had acquired the interest in real property in the form of a mortgage loan and subject to the terms of CPLR 205(a) containing the Savings Clause that has existed for over 200 years.

53.     Immediately before FAPA, Class Plaintiff, and all other similarly situated, had a possible procedure defect in pending litigation that could be cured pursuant to the Savings Clause.

54.     Immediately after FAPA, Class Plaintiff, and all other similarly situated, had the rights that they had obtained from the original plaintiff striped by operation of law. Notwithstanding, the original plaintiffs still pursuing litigation retained the very same rights striped from a successor-in-interest.

55.     Pursuant to the New York UCC, the Class Plaintiff was vested with all rights in the hands of its predecessor, "…the assignee steps into the assignor's shoes and acquires whatever rights the latter had (see *Furlong v. Shalala*, 156 F.3d 384, 392 ([2d Cir 1998])." *In re Stralem*, 303 A.D.2d. 120, 122 (NY App. 2d, 2003). FAPA materially and retroactively altered the rights being

transferred and removed rights that materially and significantly impacted the value of all of the property rights belonging to Class Plaintiff and all others similarly situated.

56.     This class Action in comprised of at least two sub-classes, including (1) those members who have been retroactively stripped of rights existing under the 200 plus year-old Savings Clause, and (2) those members who may be or have been stripped of their rights to enforce their mortgage interests due to the retroactive effect of the reversal of the Engel Decision.

## CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of a class defined as (the "Class"):

> All persons or entities who, on or after December 30, 2022, held a mortgage loan secured by real property in the State of New York that became unenforceable, in whole or in part, by operation of FAPA (L. 2022, ch. 821).

58.     Excluded from the Class are Defendant, its officers and employees, and members of the judiciary assigned to this Case.

59.     **Numerosity**: The Class is so numerous that joinder is impracticable. On information and belief, FAPA extinguished enforcement rights in tens of thousands of mortgage loans

60.     **Commonality**: – Common questions of law and fact include:

a.      Whether FAPA retroactively extinguished vested property rights and interests from each class;

b.      Whether those rights constitute property under the Takings Clause;

c.      Whether retroactive application of FAPA effected a taking without just compensation; and

d.      What remedies (injunctive, declaratory, and monetary) are appropriate.

61. **Adequacy**: Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in these claims and complex litigation.

62. Rule 23(b)(2) – Defendant has acted on grounds generally applicable to the Class, making injunctive and declaratory relief appropriate.

63. Rule 23(b)(3) – Common questions of law and fact predominate, and a class action is superior to other methods of adjudication.

## COUNT I

### Fourteenth Amendment, Incorporated Takings Clause (Facial and As Applied) Pursuant to 42 U.S.C. §1983, Under *Ex parte Young*, and Directly Under the Incorporated Takings Clause

64. Plaintiff realleges and incorporates by reference all prior paragraphs as though fully set forth at length herein.

65. The retroactive change to New York's foreclosure statute of limitations effectuated by FAPA, Chapter 821 of the Laws of 2022, effectuates a confiscation of the value of the Class Plaintiff's and all others' similarly situated, interests in property as evidenced by their recorded mortgage interest in the real property. *Lucas v. South Carolina Coastal Commission*, 505 U.S. 1003 (1992).

66. Plaintiff's right to enforce mortgage contracts and recover the value of the collateral is a vested property interest protected under the U.S. Constitution.

67. New York has substantially interfered with and destroyed the economic value of these property interests by retroactively changing the CPLR 205(a) through the passage and implementation of FAPA and rendering enforcement of the affected loans legally impossible.

68.     FAPA effectuates a taking of substantive rights both facially and as applied, where New York has not provided for nor authorized any just compensation to affected lenders, servicers, or investors.  The taking under FAPA does not fall within the New York Constitutional authorities regarding taking of property rights.

69.     The right to make use of property is an essential and inherent aspect of property ownership that is protected by the Fifth and Fourteenth Amendments to the United States Constitution.

70.     The enforcement of the provisions of FAPA retroactively removing property rights, recognized for over 200 years, transferred to a successor-in-interest in accordance with state law, such as Class Plaintiff and all others similarly situated, on its face and as applied, results in a per se taking of a portion of the vested property interest rendering it worthless due to the retroactive nature of the taking.

71.     The enforcement of the provisions of FAPA to retroactively declare mortgage rights as invalid notwithstanding actions were taken in compliance with the law of the State of New York pursuant to the Engel Decision by retroactively striking that decision and thereby also declaring any mortgage holders who did not comply with previously non-existent FAPA requires divested of their rights is also actionable and unconstitutional.

72.     Without just compensation, FAPA cannot be justified as retroactively altering rights transferred as it looks to retroactively alter contractual and property rights already conveyed to Class Plaintiff and all others similarly situated.

73.     Further, New York's actions to impact and strip rights only in the event an original plaintiff has transferred its rights while leaving those rights intact for the original plaintiff

demonstrates that the taking is against a very specific class without compensation to that specific class. FAPA cannot be justified as a regulation as it does not set a restriction across the entire asset class of interests in real property based upon defaulted mortgages but seeks to single out and retroactively stripe rights and interests from those who have purchased interests in real property believing that they were acquiring all rights, title and interests existing at the time; FAPA selective strips certain interests in real estate rather than setting a general change in the rule applicable to all owners of mortgage interests in real property.

74. FAPA is not a broad-based regulation but is designed to excise very specific mortgage interests. New York also implemented FAPA in order to benefit some of the very legislatures who were faced with and still are faced with foreclosure.

75. FAPA's retroactive effect solely against successors-in-interest, as to the Savings Clause, imposes a burden on the class that lacks any nexus to the government's claimed, intended purpose such that it does not constitute a mere change in regulation.

76. Even if it were not a *per se* taking, FAPA's retroactive effect as to the Savings Clause and reversal of the Engel Decision results in a regulatory taking under *Penn Central Transportation Co. v. New York City*, 439 U.S. 883 (1978). The economic impact is to confiscate the value of the mortgage interests; that retroactive change and/or confiscation of rights interferes with the value of the property interest and certainly interferes with the owner's investment-backed expectation, as the purpose of owning or purchasing the mortgage interest is to collect on the interest by enforcing the rights transferred at the time of transfer; FAPA does not actually seek to regulate the length of time of all mortgage interests or even specifically classes of mortgage interests, rather it seeks to retroactively stripe successors-in-interest of their contractual bargained for rights.

77. This deprivation constitutes an uncompensated taking of property in violation of the Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment.

78. As a direct and proximate result of the State's unconstitutional conduct, Class Plaintiff, and those mortgage holders similarly situated, have suffered actual damages, including the total loss of the economic value of multiple mortgage interests, in an amount to be proven at trial.

79. Class Plaintiff and all others similar situated are owed just compensation for the taking of the mortgage interest retroactively by stripping successors-in-interest of long-standing rights.

80. Unless the Court provides declaratory relief and just compensation, the stripping of rights belonging to successors-in-interest will continue to injure Class Plaintiff and others similarly situated to the benefit of those holding junior property interests to Class Plaintiff, including, but not limited to persons such as Sanders who is presently involved in a sixteen year long piece of litigation.

81. Plaintiffs are owed just compensation for the taking of the mortgage interest retroactively by striping successors-in-interest of long-standing rights.

## COUNT II

### Equal Protection Clause (Facial and As Applied)
### Pursuant to 42 U.S.C. §1983, Under *Ex parte Young*

82. Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

83.     Article I, Section 10 of the United States Constitution provides that "No State shall … pass any … Law impairing the Obligation of Contracts."

84.     Plaintiff and the members of the Class are parties to, or assignees and beneficiaries of, mortgage contracts executed under the laws of New York State.

85.     At the time these contracts were entered, New York law recognized the enforceability of foreclosure remedies as well as rights and remedies in place for over 200 years in order to assure that the harsh concerns regarding procedural requirements are balanced with remedial rights to guard against undue outcomes; the Savings Clause is one of those remedial rights in place for over 200 years.

86.     The U.S. Supreme Court has long recognized that the Due Process Clause to the Fourteenth Amendment protects owner's rights to convey their property interests and the price of their choosing along with all rights they possess at the time of the transfer.

87.     The retroactive application of FAPA without due process, substantially impairs owners' rights acquired by assignment by retroactively striping the assignee of rights conveyed by the assignor without any rationale nor public interest as the extinguishment of rights is arbitrary as to time and scope, impacting only those who already purchased existing rights. contracts by extinguishing lenders' and assignees' rights to enforce repayment of mortgage debt through foreclosure.

88.     The retroactive enforcement of the provisions of FAPA to declare mortgage rights as invalid for failure to comply with the newly introduced deceleration provisions of FAPA which did not exist previously by retroactively reversing the Engel Decision thereby divesting mortgage

holders' rights for failure to comply with a future, then non-existent, FAPA requires is a violation of constitutionally protected rights and property interests.

89.     The impairment is substantial and unreasonable, as it destroys the essential security and enforceability of the contracts acquired by Class Plaintiff and others similarly situated.

90.     New York cannot distinguish nor establish any difference between property rights in the form of a mortgage lien nor the rationale between striping rights from a successor-in-interest when New York has not effected any stripping of the exact same rights from the assignee of the mortgage interest in the property.  The change implemented through FAPA seizes and strips assignees of rights, the same rights that remain intact and exist to this day with the assignor.

91.     In other words, New York is irrationally discriminating amongst owners of materially identical assets, interests in property, setting disparate rules, rights and interests retroactively based solely on when those rights and interests were acquired in relationship to the institution of enforcement of the rights held by the Class Plaintiff and others similarly situated.

92.     The State of New York cannot justify the retroactive deprivation of contractual rights under any legitimate public purpose sufficient to outweigh the Constitution's prohibition; such that the appropriate remedy is the payment of just compensation by New York.

93.     Accordingly, FAPA violates the Contracts Clause of the United States Constitution and Equal Protection via 42 U.S.C. § 1983.

94.     Plaintiff and the Class are entitled to declaratory relief, injunctive relief, just compensation and any other relief deemed just and proper by this Court.

**COUNT III**

**Fourteenth Amendment, Incorporated Takings Clause (Facial and As Applied) Pursuant to 42 U.S.C. §1983, Under *Ex parte Young*, and Directly Under the Incorporated Takings Clause**

95.     Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

96.     The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

97.     Plaintiff and the Class possessed vested property and contract rights in the enforceability of their mortgage loans, including the right to foreclose upon default.

98.     The Due Process Clause prohibits such takings that are arbitrary.

99.     The retroactive application of FAPA destroyed those vested rights and deprived Plaintiff and the Class of the benefit of their bargain without adequate justification, notice, or compensation.

100.    The legislation operates arbitrarily and irrationally, as it retroactively nullifies valid property rights and undermines settled expectations without serving a legitimate or proportionate state interest.

101.    This retroactive deprivation of rights constitutes a violation of the substantive protections of the Due Process Clause of the Fourteenth Amendment.

102.    The implementation of FAPA irrationally discriminates against successors-in-interest/assignees by arbitrarily striping them of rights already conveyed by the assignors without impacting nor altering the rights of the exact same mortgage/property rights that have not been assigned to a successor-in-interest.

103.     The implementation of FAPA irrationally discriminates against mortgage holders for retroactively requiring specific language and actions that did not exist while the Engel Decision was the law of the land based on whether or not a mortgage lender had language and/or took actions previously never required but awarding those mortgage lenders who by dumb luck included language compliant with an non-existent statute, FAPA back when rights under the Engel Decision were exercised by a mortgage holder.

104.     The application of FAPA to assignees even though they possess and have purchased a property right identical to the assignors, who remain unimpacted by FAPA, constitutes a fundamentally arbitrary imposition of the law.

105.     Plaintiff and the Class are entitled to declaratory and injunctive relief, as well as such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims set forth in this Complaint.

[Rest of Page Intentionally Left Blank]

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A.  Certify this action as a Class Action under Fed. R. Civ. P. 23;

B.  Declare that the retroactive application of Chapter 821 of the Laws of 2022 constitutes an unconstitutional taking without just compensation;

C. Enjoin Defendants from continuing any actions in violation of the U.S. Constitution or applicable law;

D. Award Class Plaintiff and the Class just compensation for the taking of their property interests;

E. Award attorneys' fees and costs under 42 U.S.C. § 1988;

F. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ Steven K. Eisenberg, Esquire
Steven K. Eisenberg, Esquire
Jessica Manis, Esquire (Pro Hac Vice)
Stern & Eisenberg, PC
1581 Main Street, Suite 200
Warrington, Pennsylvania 18976
seisenberg@sterneisenberg.com
jmanis@sterneisenberg.com
(215) 572-8111

Jonathan Roman, Esquire
jroman@hoflawgroup.com
Hladik, Onorato & Federman, LLP
777 West Chester Avenue
Suite 101
White Plains, New York 10604
845-270-8779

Stephen M. Hladik, Esquire
shladik@hoflawgroup.com
Hladik, Onorato & Federman, LLP
298 Wissahickon Avenue
North Wales, PA 19454
215-855-9521